## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LEMUEL WASHINGTON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v ) | No. 08 C 6571 |
| ) | |
| CHICAGO PUBLIC SCHOOLS and ) | Judge Rebecca R. Pallmeyer |
| CATHERINE SACCOMANDO, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lemuel Washington ("Washington") brings this action pursuant to 42 U.S.C § 1983 against Catherine Saccomando, in her official and individual capacity, and the Chicago Public Schools, claiming a violation of his Fourth and Fourteenth Amendment rights against unreasonable seizure. Plaintiff also brings state law claims against the same Defendants for false imprisonment, intentional infliction of emotional distress, as well as claims of corporal punishment and physical restraint in violation of the Illinois School Code. Specifically, Plaintiff alleges that while he was a student at Von Steuben High School, Defendant Saccomando, who was one of his teachers, placed him in a small room attached to the classroom, locking the door behind her as a response to Plaintiff's behavior in the classroom. Defendants have moved for summary judgment on all claims. For the reasons set forth below, the court grants Defendants' motion for summary judgment as to the federal claims and dismisses the state law claims without prejudice.

## BACKGROUND

**Factual Background**

In 2007, Plaintiff Lemuel Washington ("Washington") was a junior at Von Steuben High School. (Compl. ¶ 11.) On November 15 of that year Washington was in Defendant Saccomando's environmental sciences class. (Compl. ¶ 12.) Saccomando was lecturing about the fatal consequences of smoking and Washington stated out loud that someone from his church had lung

cancer and was healed through prayer, a comment that seemed to amuse his classmates. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts [65] [hereinafter Pl.'s Resp.] ¶ 13.) Saccomando considered this to be an inappropriate disruption of the class (Compl. ¶ 14), and directed Washington to step into the hallway and complete his work outside the classroom. (Pl.'s Resp. ¶ 17.) At some point while Washington was in the hallway, Saccomando stepped into the hallway and asked him if he was ready to discuss his behavior. (Pl.'s Resp. ¶ 18.) Plaintiff claims she had an "apologetic" tone as if trying to "smooth things over." (Washington Aff. ¶ 7, Ex. A to Pl.'s Resp.) Washington refused to respond to Saccomando's overture and instead stated, "I don't want to talk to you." (Pl.'s Resp. ¶ 19.) When Washington finished his work, he entered the classroom and Saccomando directed him to sit in a small room attached to the classroom, with the door open so that she could keep an eye on him. (Pl.'s Resp. ¶ 20, 24; Compl. ¶ 14.)

Defendants assert that this small room was used as an office for one of the teachers (Def.'s Statement of Undisputed Material Facts [60] ¶ 20, 21); Washington denies this, but he admits the office was often used for teacher-student discussions. (Pl.'s Resp. ¶ 21.) A few minutes after Washington took a seat in that room, Saccomando again walked over to him and asked him if he was ready to discuss what had happened in the classroom. Washington appeared indignant and again refused to speak with her. (Pl.'s Resp. ¶ 25.) Saccomando told him that because he and she would be in class together all year, it would be a good idea to talk about what had just happened. While Saccomando was standing in front of him, Washington looked past her into the classroom. (Pl.'s Resp. ¶ 26.) Defendant asserts that at this point, Washington mouthed words to another student who was seated across the room, laughing (Def.'s Statement of Undisputed Material Facts ¶ 26), but Washington denies that he mouthed any words to another student. (Pl.'s Resp. ¶ 26.) At that time, Saccomando walked out of the office, closing the door behind her. (Pl.'s Resp. ¶ 28.) Saccomando asserts she did so in order to block Washington's view of other students and stop the interaction (Def.'s Statement of Undisputed Material Facts ¶ 28), but Washington contends that

2

Saccomando closed the door to inflict informal punishment on him. (Pl.'s Resp. ¶ 28.) The small room where Washington remained has a thick door with a combination lock and no other doors or windows. (Def.'s Answer ¶ 15.)

Washington asserts a number of additional facts, all of which Defendants deny: that the room was used as a storage closet for chemicals (Pl.'s Resp. ¶ 23); that Saccomando shut the door with Washington locked inside (Pl.'s Resp. ¶ 28); that Washington began to panic and feel claustrophobic (Pl.'s Resp. ¶ 29); that Plaintiff kicked and banged on the door, indicating he felt trapped and wanted to be let out (Pl.'s Resp. ¶ 29); that after approximately ten minutes, a maintenance worker assisted him in opening the door; (Pl.'s Resp. ¶ 31); and that Washington has suffered from nightmares, sleeplessness, social tension, and decreased concentration since the incident. (Pl.'s Resp ¶ 50; Washington Aff. ¶ 30.) Defendants assert that the door was not capable of being locked (Def.'s Resp. to Pl.'s Additional Undisputed Facts [70] at 2), and Washington admits that the combination lock may have been in some manner faulty or not operational. (Pl.'s Resp. ¶ 21.) Washington nevertheless disputes that the door could not be locked and insists that he was in fact locked in the room for roughly ten minutes. (Pl.'s Resp. ¶ 22, 31.) In deposition testimony, given prior to his affidavit, Washington said that he believed a janitor opened the door because he "heard [Defendant Saccomando] fiddling at the door when the bell had rung, and [Saccomando] couldn't open the door." (Washington Deposition, Ex. I to Def.'s Resp. to Pl.'s Additional Undisputed Facts at 55-56.) He claims his "release required assistance from a maintenance worker" and that the next day he "heard a maintenance person stating to [the] principal [ ] that 'a student' . . . had been locked in the room the previous day." (Pl.'s Resp. ¶ 31.) When he exited the room, three minutes after the bell signaled the end of class, Defendant Saccomando was the only person remaining in the classroom. (Washington Deposition at 55-56.)

**DISCUSSION**

Summary judgment is appropriate if the materials in the record demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). The mere existence of an alleged factual dispute between the parties, however, will not defeat a properly supported motion for summary judgment where there is no *genuine* issue of material fact-a fact that might affect the outcome of the suit under applicable substantive law. *See East-Miller v. Lake County Highway Department*, 421 F.3d 558, 561-62 (7th Cir. 2005) (citing *Anderson*).

**I.     Jurisdiction**

Washington brings his claim pursuant to 42 U.S.C. § 1983, which creates a federal cause of action for violations of federal Constitutional rights, perpetrated under color of state law, of rights secured by the Constitution and laws of the United States. *See* 28 U.S.C. § 1343(a)(3); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). He also brings several state claims in addition to its § 1983 claim over which the court has supplemental jurisdiction.

**II.    Claims Against Catherine Saccomando**

Plaintiff alleges that Defendant Saccamondo violated his Fourth Amendment right against unreasonable seizure. Saccamondo seeks summary judgment on Plaintiff's claim, arguing that qualified immunity shields her from liability.

**A.     Qualified Immunity and Fourth Amendment Claim**

Government officials performing discretionary functions are generally shielded from liability if their conduct did not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Supreme Court in *Saucier v. Katz* established a two-part test to establish whether qualified immunity should be granted: 1) whether the alleged facts, viewed in the light most favorable to the party assessing the injury, show the officer's conduct violated a constitutional right, and 2) whether the right was clearly established.  533 U.S. 194, 201 (2001). Courts have discretion in determining the order in which these inquiries are to be decided in achieving the most efficient disposition of the case.  *Pearson v. Callahan*, 129 S.Ct. 808, 821 (2009).  A negative finding as to any of the two inquiries will support a grant of qualified immunity. *See id.* at 823.

The critical question here is whether, at the time of the events, students in high school had a clearly established right to be free from temporary confinement as a disciplinary measure taken by a school official.  In order to find such a clearly established right, there must be "sufficient consensus," based on all relevant case law, that the official's conduct was unlawful.  *Landstrom v. Ill. Dep't of Children & Family Servs*., 892 F.2d 670, 676 (7th Cir. 1990); *see also Saucier*, 533 U.S at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 639-40 (1987)) (to defeat qualified immunity, the alleged right must have been clearly established in a particularized way so that a reasonable official would understand that what he is doing violates the law).  It is plaintiff's burden to show that the constitutional right was clearly established. *Landstrom*, 892 F.2d at 675 (*citing Abel v. Miller*, 824 F.2d 1522, 1534 (7th Cir. 1987)).

To meet that burden, Washington cites *Rasmus v. Arizona*, 939 F. Supp. 709, 711-12 (D. Ariz. 1996), where an emotionally-handicapped eighth-grade student was briefly confined in a windowless "time out room" as a disciplinary measure, and alleged a violation of his Fourth Amendment right to be free from unreasonable seizure.  *Rasmus,* a district court case from another jurisdiction, is not binding on this court.  In any event, the *Rasmus* court did not render a decision on the merits but only held that the plaintiff had produced enough evidence to survive a motion for summary judgment as to whether the conduct at issue was an unreasonable seizure.  In denying

5

summary judgment, the court particularly relied on the plaintiff's testimony that he felt he had no choice but to enter the room because he had seen his teacher seize other students and throw them in the room when they refused to enter on their own. *See id.* at 713-14, 716. Notably, although the claim itself survived summary judgment, the court concluded defendants were entitled to qualified immunity. *Id.* at 719. In light of these factors, it is hard to see how *Rasmus* puts the Defendants in this case on notice that they were violating clearly established law.

Indeed, controlling authority in this jurisdiction points in the other direction. *Wallace v. Batavia Sch. Dist.*, 68 F.3d 1010, 1014 (7th Cir. 1995) established that, depending on the circumstances, reasonable action may include a seizure of a student in the face of disruptive behavior. In *Wallace*, a student alleged a violation of her Fourth Amendment right to be free from unreasonable seizure when a teacher momentarily grabbed her wrist and elbow to escort her from the classroom. *Id.* at 1011. The court found no violation, stating that a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent. *Id.* at 1014. Unlike the student in *Wallace*, Washington was neither physically removed from the classroom nor physically forced to enter the room. And unlike the student in *Rasmus*, Washington has not alleged he felt he had no choice to enter the room for fear of being physically forced into it by his teacher. *See Rasmus*, 939 F. Supp. at 713-14. In light of the Seventh Circuit's conclusion that a physical seizure in response to a student's disruptive behavior did not violate the Fourth Amendment, the court concludes Saccomando was not on notice that a disciplinary measure which does not involve such physical contact would amount to a constitutional violation. *See Wallace*, 68 F.3d at 1013-14 (deprivations of liberty at school do not pose inherent constitutional problems).

Washington insists that his classroom conduct was not disruptive and that Saccomando's actions were capricious, meaning that her conduct was unreasonable even under the standards announced in *Wallace*. The court is less certain. Saccomando directed Washington to sit in the

6

small room–with the door open–only after she attempted to discuss with him what had happened in the classroom. She then again tried to talk to him while in that room and closed the door behind her only after he again refused to speak to her. Even assuming that Washington's initial comment was not genuinely disruptive, his continued refusal to speak to his teacher disturbed the normal course of the class. Washington himself admits that the process of moving him into the hallway, then into the small room, and entering the room to talk to him was potentially distracting. (*See* Pl.'s Resp. ¶ 27.)

Had Saccomando locked Plaintiff in the room indefinitely, without monitoring his safety, Plaintiff might well state a Fourth Amendment violation. To illustrate the dangers of restraint and seclusion in the school environment, Plaintiff references the 1994 suicide of a Georgia special education student who hung himself with his shoelaces in a time-out room. (Pl.'s Mem. in Opp. to Summ. J. at 8.) *See also* Nancy Badertscher, "State May Ban Seclusion Rooms," Atlanta Journal-Constitution (May 13, 2010); *King v. Pioneer Regional Educational Service Agency*, 301 Ga.App. 547, 688 S.E.2d 7 (Ga. App. Ct. 2009). Leaving a child captive and unattended in a small, windowless room may well be the type of "objectively unreasonable" seizure that would defeat qualified immunity. Plaintiff alleges that is what happened here–that he was locked in a 55-square-foot room and had to bang and kick at the door until a maintenance worker freed him ten minutes later. (Compl. ¶¶ 14, 21.) This account, however, is contradicted by Plaintiff's own deposition testimony, in which he said that he remained in the room for only three minutes after class ended, that he saw no maintenance worker after exiting, that he believed Saccomondo did attempt to open the door, and that when he left the room Saccomondo remained in the classroom. (Washington Deposition at 55-56.) The court credits Plaintiff's deposition testimony, absent some explanation as to why it contradicts his later affidavit. *See Janky v. Lake County Convention and Visitors Bureau*, 576 F.3d 356, 362 (7th Cir. 2009) ("[L]itigants cannot create sham issues of fact with affidavits that contradict their prior depositions." (citation and quotation omitted)). Plaintiff's own

7

testimony shows that the restriction on his liberty was brief and apparently unintentional.

That said, it is clear that, for some period of time, Plaintiff was placed alone in a windowless room. Without finding that any "clearly established" right was violated, the court notes that such a measure may not be recommended. The Illinois School Code in fact prohibits the use of seclusion rooms "where the room contains anything that could be used by students to harm themselves" and "where the room prevents continuous visual monitoring of and communication with the student." (Pl.'s Mem. in Opp. to Summ. J. at 7 (quoting 23 Ill. Admin. Code §§ 1.285(a)(1)(B)-(C)).) Washington urges that restrictions imposed by the Illinois School Code advising against the use of seclusion rooms except when specific conditions are met should have put Saccomando on notice that her conduct was illegal. State agency guidelines or policies constitute clearly established law for purposes of qualified immunity, however, only when the breach of the state regulation rather than the constitutional violation gives rise to the claim of damages. *Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997) (citing *Davis*). Washington's unreasonable seizure claim is based on a violation of the Fourth Amendment and not on a violation of the administrative regulations of the Illinois School Code. He cannot rely upon the school code regulations as evidence of clearly established law.

The court concludes Washington has not established that Saccomando violated a right that was clearly established at the time of these events. Plaintiff's allegations are troubling, and though the record does not suggest Saccomando intended her actions to be punitive, Plaintiff may well have believed them to be. Teachers face difficult situations in the classroom every day, and often must make split-second disciplinary decisions, as Saccomando did here. Because teachers must maintain order and discipline, students do surrender some liberty "once inside the schoolhouse gate." *Wallace*, 68 F.3d at 1014. That surrendered liberty should, in the court's view, be exploited as sparingly as possible. The court is unaware of the tone or circumstances in which Plaintiff's statement was made, but it may be that, had Saccomando patiently engaged the statement, as

absurd as it seemed to her, instead of removing Plaintiff from the classroom, the incident might have concluded on November 15, 2007, and not in federal court more than three years later. The court nevertheless acknowledges that teachers have wide latitude to take reasonable action "in the face of provocative or disruptive behavior," *Wallace*, 68 F.3d at 1014, and concludes that Saccomando did not violate clearly established law. The court grants summary judgment in her favor on the § 1983 claim.

### B. State law claims

Washington also brings state claims against Saccomando for false imprisonment, intentional infliction of emotional distress, and corporal punishment and physical restraint in violation of the Illinois School Code. In general, a federal court should relinquish jurisdiction over state law claims if all federal claims are dismissed before trial. *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) (*citing Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1251 (7th Cir. 1994)); 28 U.S.C. § 1367(c)(3) (a district court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction). Having dismissed Plaintiff's federal claim, the court declines to exercise jurisdiction over his state claims.

## III. Section 1983 Claim Against Chicago Public Schools

Plaintiff has argued that Saccomando's actions were authorized by Chicago Public Schools and carried out within the scope of her employment. If he were successful in that claim, he could impose liability on the Chicago Public Schools only if he can establish (1) the existence of a policy that causes a constitutional deprivation; (2) that the alleged constitutional injury was caused by a person with final policymaking authority; or (3) a widespread practice that although not authorized by law is so permanent and well settled as to constitute a custom. *Phelan v. Cook County*, 463 F.3d 773, 789 (7th Cir. 2006) (citing *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978)). The court has not formally ruled on the merits of Plaintiff's Fourth Amendment rights were not violated, but notes that if those rights were violated, this record does not support a finding

9

of *Monell* liability.

Washington initially alleged that the Chicago Public Schools are liable under a *respondeat superior* theory, but for purposes of his Fourth Amendment claim, this is a nonstarter. "The doctrine of respondeat superior is unavailable under § 1983." *Darchak v. City of Chicago Bd. of Educ.*, 580 F>3d 622, 629 (7th Cir. 2009). And he does not allege the existence of a policy that violated his constitutional rights. To the contrary, he alleges that Saccomando acted in violation of the Chicago Public School disciplinary policy. (*See* Compl. ¶ 23.) Washington has also failed to prove that Saccomando had final policy-making authority. The section of the Illinois School Code addressing the "maintenance of discipline" specifically gives policymaking authority to the board and not to teachers. It states, in relevant part, "[n]othing in this Section affects the power of the board to establish rules with respect to discipline, except that the rules . . . shall provide that a teacher may remove a student from the classroom for disruptive behavior." 105 ILCS 5/34-84a. Washington has also failed to show the existence of a widespread practice establishing a custom. In order to do so, a plaintiff must show that the problem has arisen many times and the municipality has acquiesced in the outcome in a way that amounts to a policy decision. *See Phelan*, 463 F.3d at 789-90. Washington's allegations do not contain any statements of fact from which this court could infer there was a custom that resulted in a violation of Washington's constitutional rights.

Finally, although Washington once invoked the *respondeat superior* theory, (*see* Compl. at 7), he now claims the Chicago Public Schools are liable under a ratification theory. (*See* Pl.'s Mem. in Opp. to Summ. J. at 8-9.) The case law forecloses this argument, as well. "A § 1983 claim based on a ratification theory must allege that a municipal official with final policymaking authority approved the subordinate's decision and the basis for it." *Darchak*, 580 F.3d at 630 (quoting *Baskin v. City of Des Plaines*, 138 F.3d 701, 705 (7th Cir. 1998)). Failing to take punitive action against the alleged wrongdoer does not meet the level of ratification. *Id.* Washington has not introduced any evidence that the Board was aware of any potential unlawful basis for Saccomando's actions,

and its failure to punish Saccomando is insufficient for a finding of liability. For these reasons, even if Saccomando's actions amounted to a violation of Washington's constitutional rights, Chicago Public Schools are not liable for said violation. The court grants summary judgment in favor of the Chicago Public Schools as to the § 1983 claim.

## **CONCLUSION**

Defendants' motion for summary judgment [59] is granted. Plaintiff's federal claims are dismissed with prejudice. His state law claims are dismissed without prejudice.

ENTER:

Dated: March 17, 2011

_____
REBECCA R. PALLMEYER
United States District Judge